# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MICHAEL A. WHALEY, and VALERIE )
M. ROBINSON, )
 )
      Plaintiffs, )
 )
      v. ) C.A. No. 12-633-LPS
 )
LEWIS D. SCHILIRO, Secretary, Delaware )
Department of Safety and Homeland )
Security, Division of State Police, )
 )
      Defendant. )

---

Gary Aber, Aber, Baker & Over, Wilmington, DE.
Robert T. Vance, Jr., The Law Offices of Robert T. Vance, Jr., Philadelphia, PA

    Attorneys for Plaintiffs

Barry W. Willoughby, William W. Bowser, Lauren E.M. Russell, Young Conaway Stargatt & Taylor LLP, Wilmington, DE

    Attorneys for Defendant

---

## MEMORANDUM OPINION

March 31, 2015
Wilmington, DE

Plaintiffs Michael A. Whaley ("Whaley") and Valerie M. Robinson ("Robinson" and, with Whaley, "Plaintiffs") filed this lawsuit on May 22, 2012, alleging discrimination. (D.I. 1 at 1) Pending before the Court is the motion for summary judgment filed by Defendant Lewis D. Schiliro, Secretary, Delaware Department of Safety and Homeland Security, Division of Police's ("Defendant"). (D.I. 44) For the reasons discussed below, the Court will grant the motion.

## I. BACKGROUND

Taking the record evidence in the light most favorable to Plaintiffs, as the Court is obligated to do at this stage of the proceedings, the record shows the following. Plaintiffs, who are African-American, were employed by the Delaware State Police ("DSP") for 23 years, from approximately 1988 to June 2011. (D.I. 1 at 2) On June 24, 2011, both Plaintiffs entered guilty pleas to criminal misdemeanor charges of theft by false pretense and official misconduct. (D.I. 46-5 at A106) A third DSP officer, Sergeant Lance Willey ("Willey"), a white male (D.I. 1 at 5), entered identical guilty pleas to the same criminal misdemeanor charges (D.I. 45 at 8).

Among other things, the DSP "is responsible for transporting mentally disabled, disturbed or abnormal individuals to medical and/or mental health facilities." (D.I. 1 at 2) Both Plaintiffs participated in transporting individuals to facilities. The criminal charges against them stemmed from an administrative investigation into allegations that Plaintiffs falsely reported overtime payments in conjunction with off-duty DSP assignments. (D.I. 45 at 3)

In particular, Whaley's superiors learned that he may have been claiming that he was entitled to overtime payments, which reflected twice the number of hours he actually worked. (*Id.*) Investigators learned that other individuals, including Robinson, may also have been falsely

1

reporting overtime to the DSP. (*Id.* at 4) For instance, Plaintiffs were claiming that "Two-Person-Transports" were necessary for certain individuals, when, in reality, only one officer conducted the transport. (*Id.*)

Plaintiffs contend that the practices in which they were engaged were "never objected to" and had been going on for well over 20 years. (D.I. 1 at 6) Eventually, however, an investigation by the Delaware Department of Justice concluded that Plaintiffs had engaged in criminal conduct, specifically "overtime fraud and illegal compensation for hours not worked." (D.I. 45 at 7) After criminal charges were filed,

> Plaintiffs and Sgt. Willey plead guilty to identical charges, and agreed to (1) pay restitution; (2) forfeit their Council on Police Training ("COPT") Certification; and (3) not be employed in any law enforcement capacity in the State of Delaware going forward. Transcripts of the plea hearings make clear that Plaintiffs entered into their plea agreements knowingly, and with advice of counsel.

(D.I. 45 at 8); (*see also* D.I. 46-5 at A106, A107)

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence

2

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III. DISCUSSION

Plaintiffs' complaint contains three claims. (D.I. 1) In count 1, they allege that Defendant discriminated and retaliated against Plaintiffs by denying them on the basis of race, in violation of their rights under 42 U.S.C. § 1981. In count 2, Whaley alleges that Defendant discriminated and retaliated against him on the basis of race and age and retaliated against him, all in violation of his rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Finally, in count 3, both Plaintiffs allege that their rights protected under the Delaware Discrimination in Employment Act, 19 Del. C. § 711(a), were violated when Defendant discriminated and retaliated against them on the basis of race and age.

In seeking summary judgment, Defendants make several arguments, including that the Section 1981 claims are barred by the doctrine of sovereign immunity, all of the discrimination claims must be dismissed due to the absence of evidence of an adverse employment action and discriminatory intent, all of the retaliation claims must be dismissed due to the absence of evidence of Plaintiffs engaging in protected activity and of retaliatory animus, and that all claims must be dismissed because Defendant's actions were undertaken in the course of a criminal prosecution. (*See* D.I. 45) The Court agrees with Defendant that judgment must be entered on

his behalf on all claims but discusses below only some of the bases Defendant has offered to support this disposition.[1]

## A.  Eleventh Amendment Immunity

Plaintiffs allege in count 1 that Defendant violated their rights protected under Section 1981. Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). In turn, 42 U.S.C.§ 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). To prevail on a § 1981 claim, a plaintiff is required to plead facts demonstrating that the plaintiff is member of a racial minority, that there was intent to discriminate on the basis of race by the defendant, and that discrimination concerned one or more of the activities enumerated in the statute. *See Hood v. N.J. Dep't of Civil Service*, 680 F.2d 955, 959 (3d Cir.1982); *McDuffy v. Koval*, 226 F. Supp. 2d 541, 550 (D. Del. 2002).

Absent a State's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant. *See Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam)). The State of Delaware has not waived its immunity from suit in federal court and, although Congress can abrogate a State's sovereign immunity, it did not do so through the enactment of § 1983. *See Brooks–McCollum v.*

---

[1] In not discussing all of Defendants' contentions, the Court is not concluding that these additional contentions lack merit, only that it is unnecessary to discuss them.

*Delaware*, 213 Fed. Appx. 92, 94 (3d Cir. Jan. 11, 2007).

DSP is a state agency for Eleventh Amendment purposes. *See e.g.*, *Grinnell-Cropper v. Sands*, 2014 WL 5012159, at *2 (D. Del. Oct. 7, 2014). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted ); *Ali v. Howard*, 353 Fed. Appx. 667, 672 (3d Cir. Nov. 16, 2009). Thus, a suit against a DSP official in his official capacity is subject to Eleventh Amendment immunity.

Notwithstanding Plaintiffs' belated statements to the contrary (*see* D.I. 53 at 9), the Court agrees with Defendants that Plaintiffs have only alleged that they are suing Defendant in his official capacity. (*See* D.I. 45 at 10) The complaint identifies Defendant as "Secretary, Delaware Department of Safety and Homeland Security, Division of State Police." (D.I. 1 at 1) Because it does not expressly allege Defendant is named in his individual capacity, he is assumed to be named in his official capacity only. *See Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) ("Because [Plaintiff's] amended complaint does not specifically name the defendants in their individual capacities, we presume that he sued them only in their official capacities."). Moreover, prior to Defendant filing his motion for summary judgment, Plaintiffs' counsel stipulated that Plaintiffs were suing Defendant only in his official capacity. (*See* D.I. 57 at C12-13) Finally, Plaintiffs did not provide any evidence that Defendant personally engaged in unlawful conduct. (*See* D.I. 46-7 at A162-63, A205-06) (Plaintiffs' deposition testimony)[2]

---

[2] Even in their brief – which is argument and not evidence – Plaintiffs assert only that Defendant "by virtue of his position, clearly acquiesced in the violation of Plaintiffs' rights" (D.I. 53 at 9), not that he individually and personally violated their rights.

5

Accordingly, the Court will grant summary judgment to Defendant on Plaintiffs' claims for violation of Section 1981.

## B. Lack of Evidence of Adverse Employment Action

Defendant is entitled to summary judgment on Plaintiffs' claims that they were discriminated against on the basis of race or age because there is not evidence in the record from which a reasonable finder of fact could find that Plaintiffs suffered any adverse employment action, which is an element Plaintiffs would be required to prove in order to prevail on their claims under Section 1981, Title VII, and the DDEA. Each of these claims is subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for governing Title VII claims. *See also Jackson v. Temple Univ. Hosp., Inc.*, 501 Fed. Appx. 120, 123 (3d Cir. 2012) ("[C]laims under 42 U.S.C. § 1981 are governed by standards identical to those applicable to . . . Title VII claims."); *Shah v. Bank of Am.*, 346 Fed. Appx. 831, 834 n.2 (3d Cir. 2009) (holding that claims under DDEA are subject to same analysis as Title VII).

One aspect of Plaintiffs' *prima facie* case is that they suffered an adverse employment action. *See Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). "An adverse employment action can generally be demonstrated by a hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Greer v. Mondelez Global, Inc.*, 590 Fed. Appx. 170, 173 (3d Cir. 2014) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 749 (1998)). "Constructive discharge" requires evidence that working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

Here, there is no evidence of any adverse employment action, including constructive discharge. Instead, the undisputed evidence establishes that Plaintiffs were prosecuted by the

6

Delaware Department of Justice, were convicted, and were permitted, nonetheless, to retire with their full pension and health benefits. (*See* D.I. 46-7 at A157, A158, A175, A176, A214) Plaintiffs' inability to work any longer with the DSP was due to decisions made by Plaintiffs in response to actions taken by the prosecutors. Plaintiffs were represented by counsel when they pled guilty to criminal charges and when they agreed, as part of their pleas, to retire and agree not to work any longer as police officers. On this record, no reasonable factfinder could find that Plaintiffs suffered an adverse employment action.

Accordingly, the Court will grant summary judgment to Defendant on all of Plaintiffs' race and age discrimination claims.

### C. Lack of Evidence of Retaliation

Plaintiffs have failed to adduce evidence sufficient to support their prima facie case of retaliation. To meet their burden, Plaintiffs must demonstrate that they: (1) engaged in protected activity, (2) suffered an adverse employment action after or contemporaneously with their protected activity, and (3) a causal nexus between the protected activity and the adverse employment action. *See Smith v. Perdue Farms*, 2014 WL 1409950, at *8 (D. Del. Apr. 11, 2014).

The Court has already addressed the lack of evidence of any adverse employment action. Moreover, the record is devoid of evidence that Plaintiffs undertook any protected activity having any temporal proximity to the conduct giving rise to the allegations in the complaint. While Robinson filed a discrimination lawsuit in 1999, her case was resolved in 2003, while the events alleged in the complaint occurred in 2011. Whaley never complained of discrimination while employed by the DSP and only initiated an administrative proceeding (with the U.S. Equal Employment Opportunity Commission) in August 2011, several months after he had left

7

employment with the DSP.

Accordingly, the Court will grant summary judgment to Defendant on all of Plaintiffs' retaliation claims.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (D.I. 44) will be granted. An appropriate Order follows.